IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff/Respondent,<br><br>v.<br><br>Gregory Wayne Newell,<br><br>        Defendant/Petitioner. | Criminal Case No. 3:13-cr-78-1<br>Civil Case No. 3:15-cv-68<br><br>**ORDER DENYING MOTION TO VACATE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 AND DISMISSING MOTION TO UNSEAL DOCUMENT AND MOTION FOR ORDER DIRECTING THE GOVERNMENT TO RESPOND AS MOOT** |

## INTRODUCTION AND SUMMARY OF DECISION

Before the court is Gregory Wayne Newell's Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255.[1] Newell raises a claim of ineffective assistance of counsel on four grounds and asks that the court re-sentence him to 109 months, a length of sentence he claims would have been imposed in the absence of his counsel's allegedly deficient performance. Because he has failed to show that counsel's performance was deficient and that he suffered prejudice as a result, Newell's § 2255 motion is **DENIED** and the action is **DISMISSED**.

## PROCEDURAL BACKGROUND

On May 19, 2014, Newell pled guilty to a single-count Superseding Indictment that charged him with Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846 as well as aiding and abetting under 18 U.S.C. § 2.[2] Newell's plea was entered pursuant to a plea agreement the assistant Federal Public Defender negotiated with the United States.[3] Pursuant to the terms

---

[1] Doc. #235, Mot. to Vacate or Correct Sentence.
[2] Doc. #10, Superseding Indictment; Doc. #131, Minute Entry for Change of Plea Hr'g.
[3] Doc. #132, Plea Agreement.

1

of the agreement, the parties agreed to a base offense level of 36 consistent with a factual stipulation that it was "reasonably foreseeable that the conspiracy involved at least 5 KG but less than 15 KG methamphetamine."[4] The United States reserved the right to argue a higher offense level at sentencing if the pre-sentence investigation determined that Newell qualified as a "career offender" pursuant to USSG § 4B1.1.[5] The plea agreement did not contain any requirement that Newell cooperate or a promise by the DOJ to file a motion for a downward departure based on USSG § 5K1.1.[6]

On June 10, 2014, the court sentenced Newell to 156 months incarceration to run consecutively to a sentence imposed by the United States District Court for the District of South Dakota for Passing Counterfeit Securities.[7] In calculating the Guideline range, the court found that Newell had a total of 12 criminal history points and placed him in criminal history category V.[8] Three of the points came from Newell's District of South Dakota conviction.[9]

On June 26, 2014, the court vacated the judgment because the government had inadvertently failed to disclose a written report of co-defendant Kristina Larae Erickson's debriefing prior to Newell's sentencing.[10] On July 8, 2014, the court re-sentenced Newell to an identical 156-month consecutive sentence.[11]

---

[4] Id. at ¶ 13.
[5] Id.
[6] Doc. #132, Plea Agreement; Doc. #133, Plea Agreement Suppl.
[7] Doc. #142, Vacated Judgment.
[8] Doc. #143, Original Statement of Reasons.
[9] Doc. #140, Presentence Investigation Report ¶ 47.
[10] Doc. #164, Order Denying Def.'s Mot. for New Trial and Vacating Court's Judgment.
[11] Doc. #186, Judgment.

## DISCUSSION

Newell brings this § 2255 Motion asserting ineffective assistance of counsel based on four theories: (1) the Federal Public Defender failed to argue and present evidence that his District of South Dakota conviction resulted from activity that was relevant conduct in this drug conspiracy; (2) his lawyer coerced him into signing the plea agreement by falsely informing him if he did not sign the agreement, the government would seek a two-level aggravating role increase under § 3B1.1 of the Sentencing Guidelines and would argue that he was a career offender; (3) his attorney failed to dispute the amount of drugs attributed to him; and (4) his attorney's actions precluded him from receiving a departure for substantial assistance under § 5K1.1.

Ineffective assistance of counsel claims are reviewed under the familiar two-prong test from Strickland v. Washington.[12] In order to obtain relief, the defendant must prove both (1) that his attorney's performance was deficient and (2) that the deficient performance prejudiced his defense.[13] The burden of showing ineffective assistance of counsel belongs to the defendant.[14] When the defendant asserts multiple deficiencies in counsel's performance, each claim is reviewed independently.[15] There is no "cumulative error" rule applied to ineffective assistance of counsel.[16] Whenever a court is called upon to scrutinize counsel's performance, the court is required to be "highly deferential."[17]

---

[12] 466 U.S. 668 (1984).
[13] Id. at 687; United States v. Lee, 715 F.3d 215, 221 (8th Cir. 2013).
[14] United States v. White, 341 F.3d 673, 678 (8th Cir. 2003).
[15] Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).
[16] United States v. Robinson, 301 F.3d 923, 925 n.3 (8th Cir. 2002) (noting that the Eighth Circuit has rejected the cumulative error doctrine).
[17] Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005).

Under the performance prong, the defendant must show that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."[18] There is a strong presumption that counsel was operating within the broad range of professional assistance.[19] Moreover, it is inappropriate to apply the benefits of hindsight or "second guessing."[20] When considering alleged errors by counsel, the standard is one of objective "reasonableness under prevailing professional norms."[21] The burden placed on the defendant in establishing ineffective assistance of counsel is a "heavy burden."[22]

Even if the defendant is able to establish deficient performance, he must still establish prejudice.[23] Error alone is insufficient to establish prejudice, and even an error that had "some conceivable effect on the outcome" will not suffice.[24] Rather, the defendant must show a reasonable probability that the results would have been different.[25] This burden has been described as showing a "probability sufficient to undermine confidence in the outcome."[26]

## I. District of South Dakota Conviction

Newell first asserts that his attorney failed to argue and present evidence that his District of South Dakota conviction for Passing Counterfeit Securities constituted relevant

---

[18] Strickland, 466 U.S. at 689.
[19] Anderson, 393 F.3d at 754.
[20] Johnson v. United States, 278 F.3d 839, 842 (8th Cir. 2002) ("when determining whether counsel's representation was deficient, a court must avoid second guessing").
[21] Padilla v. Kentucky, 559 U.S. 356, 366 (2010).
[22] DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).
[23] Strickland, 466 U.S. at 693.
[24] Id.
[25] Id. at 694.
[26] Jeffries v. United States, 721 F.3d 1008, 1014 (8th Cir. 2013).

4

conduct in this conspiracy because he counterfeited the traveler's checks to raise money to purchase drugs. Newell further contends that because the conduct was simultaneous and connected, his sentences should have been concurrent rather than consecutive. He also argues that because the South Dakota conduct qualified as relevant conduct for purposes of calculating criminal history, the court erred when it placed him in criminal history category V rather than category IV.

Newell's claim is unsupported and contradicted in the record. At Newell's original sentencing, his counsel made two arguments why the sentences were more properly concurrent:

> The first thing is that both of these offenses come from the same root cause. Both of these offenses were offenses that were committed by a drug addict who's trying to get money and drugs to support his drug habit. The second factor is that the counterfeiting offense could have been charged in North Dakota. Some of the traveler's checks were passed in North Dakota as well as South Dakota and Minnesota. If these cases had both been charged at the same time in the same document then the South Dakota case wouldn't even count.
>
> The offense level in South Dakota, based on the South Dakota Presentence Investigation Report, was a total of eight. The offense level here is a total of 31. And based on I think it's 3D1.4 anything that's nine points or less – or more less than the highest offense level isn't even counted when sentencing. So if it was just charged in one place he would have a lower criminal history and he wouldn't have the additional sentenced taxed on top of it. So actually I think the fact that it was charged in two separate cases even if he got a hundred percent concurrent sentence that would probably be fine because the sentence in South Dakota was longer than it needed to be – the sentence here is longer than it needs to be based on the increased criminal history because of this South Dakota conviction.

When pressed by the government to provide support for his theory, Newell's counsel provided the following evidence:

> The only thing I want to add, Your Honor, is from paragraph 92 of the South Dakota Presentence Investigation Report in which the probation officer in

5

South Dakota reported that Mr. Newell states that he got hooked on methamphetamine and needed to support his habit which contributed to his illegal behavior in the South Dakota case. That's really the only evidence that I have of a connection, but I think that it does indicate that there is some connection between the two offenses.

At the time of sentencing, the court stated, "the court's of the opinion that the conduct seems pretty far afield and while his chemical dependency may have been a small factor in that criminal conduct, I think they're not related sufficiently." Even after the court's original ruling, Newell's counsel unsuccessfully pressed the court to allow at least part of the sentence to run concurrently.

The record clearly establishes that Newell's counsel forcefully argued and presented evidence that his counterfeiting activity was part of his involvement in this drug conspiracy. The court rejected these claims, finding that the counterfeiting was only tangentially related to his drug activity. Newell's counsel was not ineffective for failing to raise an issue he actually raised. Newell's first claim is **DENIED**.

## II. Voluntariness of Guilty Plea

Newell next asserts that his counsel coerced him into entering into the plea agreement by incorrectly advising him that if he proceeded to trial, the government would seek an upward adjustment for aggravating role and/or argue that he qualified as a career offender. While a defendant may challenge the voluntariness of a guilty plea in a post-conviction proceeding, "the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'"[27] When a defendant enters a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was 'within the range of

---

[27] Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting Blackledge v. Allison, 431 U.S. 63, 73 (1977); United States v. Goodman, 590 F.2d 705, 710 (8th Cir. 1979)).

6

competence demanded of attorneys in criminal cases.'"[28] To successfully attack the voluntary and knowing character of the guilty plea, the defendant must show that "the advice he received from counsel did not meet the McMann standard."[29] To meet the prejudice prong of Strickland, the defendant must show that absent counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial."[30]

At sentencing the court found that Newell's plea was freely and voluntarily made based on his representations during the change of plea hearing, and these representations bear a strong presumption of verity. Newell has not alleged any facts, even if fully credited, to overcome the presumption. The record makes plain that Newell's counsel provided advice and counsel consistent with the evidence known to him relating to the aggravating role adjustment, and that advice fell well within the range of competence demanded of criminal defense attorneys. It is worthy of note that the presentence investigating officer, after reviewing the evidence in the case, arrived at the conclusion that the two-level role in the offense adjustment applied to Newell. Certainly the government could have argued the same on the facts, and Newell's counsel was obligated to inform Newell of the possibility that the adjustment applied. Where facts existed for the government to make a colorable argument for the adjustment, counsel cannot have provided ineffective assistance of counsel by conveying that the government would seek the adjustment if Newell went to trial.

A somewhat closer question is presented related to the Federal Public Defender's discussion of Newell's possible career offender status. While Newell had a substantial and

---

[28] Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).
[29] Id. at 56–57 (citing Tollett v. Henderson, 411 U.S. 258 (1973)).
[30] Nguyen v. United States, 114 F.3d 699, 704 (8th Cir. 1997) (quoting Hill, 474 U.S. at 59). See also Voytik, 778 F.2d at 1310.

troubling criminal history, it appears from the record that he did not meet the criteria for a career offender under USSG § 4B1.1. Assuming without deciding that his counsel should have realized that he was not a career offender and advised him that the government would face an uphill challenge in claiming career offender status, Newell is unable to show any prejudice arising out of that failure.

Newell claims that his attorney's statement that the government intended to argue that he was a career offender coerced him into entering a guilty plea. The problem with this assertion is that any reading of the plea agreement plainly demonstrates that the government expressly reserved the right to claim career offender status. Clearly, if Newell's genuine purpose was to avoid this argument, he would not have signed an agreement expressly reserving it. Newell's claim to the contrary is non-meritorious on its face. Because Newell signed a plea agreement that plainly stated that the government reserved the right to argue that he was a career offender, his claim that he was coerced by his counsel's representation that the government would seek to establish career offender status is spurious. Newell has not shown that but for his counsel's statement, he would not have plead guilty. His second claim of ineffective assistance of counsel is **DENIED**.

### III. Failure to Dispute the Drug Quantity

Newell asserts that he was provided ineffective assistance of counsel when his lawyer failed to dispute the drug quantity attributable to him. Newell claims his counsel fell short of the <u>Strickland</u> performance standard in three ways: (1) His counsel failed to provide him with the government's brief containing the "ridiculous numbers" from his co-defendants' proffers until the day before Newell's re-sentencing and his counsel neither reviewed the information with Newell nor requested additional time to confront the numbers; (2) his

counsel failed to review the records of the pre-paid credit cards that Newell used in drug transactions; and (3) his counsel did not make a vigorous enough argument in the sentencing memorandum that Newell was not connected to his girlfriend Rachel Danielson's transactions after his arrest. Newell is particularly unhappy that his counsel failed to call any witnesses to testify that Newell was unconnected to Danielson's drug dealing.

This claim fails on both prongs of the Strickland analysis. Newell freely and voluntarily entered a plea of guilty pursuant to a plea agreement by which he agreed that the conspiracy involved at least 5 KG but less than 15 KG of methamphetamine. Once this stipulation was entered, his counsel made a tactical decision not to focus on drug quantity, which is well within the bell curve of professional competence. Newell's lawyer acted as any reasonably competent attorney would have at that point by focusing his attention on the areas that might actually have positively impacted Newell's sentencing posture. Newell cannot show prejudice where the alleged failure to argue a lower drug quantity would have been futile and where the arguments advanced were tactical decisions well within the bell curve of sufficient performance. Newell's third claim is **DENIED**.

### IV. Departure for Substantial Assistance

Newell's final claim is that his attorney's deficient performance prevented him from receiving a departure under USSG § 5K1.1. This claim is best addressed in two parts: (1) his lawyer's actions during and around sentencing and (2) his lawyer's actions before his debriefing. Newell claims his lawyer failed to properly explain the contradicting information in Newell's two debriefings and his co-conspirators' debriefings about drug quantity and Danielson's involvement in the conspiracy. He further contends that his

9

lawyer was ineffective when he failed to convince the court that even with the discrepancies, Newell provided substantial assistance.

These claims are simply contrary to the record. In a memorandum filed prior to Newell's original sentencing hearing, counsel argued that the court should grant a downward departure or variance based on substantial assistance even though he expected that the government would not file a motion pursuant to USSG § 5K1.1 or 18 U.S.C. § 3553(e). In the memorandum, Newell's counsel explained why discrepancies existed between Newell's statements about drug quantity in his two debriefings and argued that despite those discrepancies, his information still helped the government by leading to investigations, charges, and guilty pleas. Prior to Newell's re-sentencing hearing, Newell's lawyer asserted in a memorandum that Newell did not knowingly provide false information when he said that Danielson was not involved in the conspiracy. The public defender once again argued for a downward departure or variance for substantial assistance because despite any discrepancies, Newell had provided "names and information that led to the identification and prosecution of more than one major drug distributor in the Saint Paul area."[31] These arguments were repeated at the sentencing hearings. No lawyer can promise the efficacy of his arguments—the decisions are made by judges, not lawyers. Newell's counsel repeatedly advanced the arguments he now claims were either never made or were made ineffectually. These claims are wholly unsupported in the record. It is plain that his counsel advanced the arguments forcefully and well within the range of adequate professional competence. The obvious answer that Newell seeks to avoid is that while made, the claims were rejected by the court.

---

[31] Doc. 180, Def.'s Suppl. Sentencing Mem. 4.

Even if this were not the case, Newell cannot demonstrate prejudice. The decision to move for a substantial assistance departure is left to the prosecutor's discretion, and a district court has only circumscribed authority to review a decision not to move for a substantial assistance departure. The court may only act where "the refusal was based on an unconstitutional motive or was not 'rationally related to any legitimate Government end.'"[32] The government has no duty to move for a departure unless the plea agreement created one.[33]

The plea agreement entered into by Newell did not contemplate a § 5K1.1 departure. Even so, the government could have exercised its discretion and moved for a substantial assistance departure. The United States asserted it chose not to file a motion because Newell admittedly lied about drug quantities in his debriefings, which severely limited his value as a witness. The prosecutor indicated that the government had solid reasons to believe, based on co-conspirator statements, that even in his final debriefing Newell was deliberately untruthful about Danielson's involvement. There is nothing in this analysis or the facts in the record pointed to by Newell that could give rise to a claim of an unconstitutional motive or an irrational decision on the part of the prosecutor. At sentencing the court discussed what sort of consideration should be given in the absence of a government motion and, after analyzing the five factors found in section 5K1.1, concluded that Newell's assistance was of minimal value. This analysis would not have

---

[32] United States v. Godinez, 474 F.3d 1039, 1043–44 (8th Cir. 2007) (quoting Wade v. United States, 504 U.S. 181, 185–86 (1992)). See also United States v. Marks, 244 F.3d 971, 975 (8th Cir. 2001).

[33] Godinez, 474 F.3d at 1044 (citing Wade, 504 U.S. at 185). See also United States v. Sandoval, 204 F.3d 283, 285–286 (1st Cir. 2000) (citing Wade, 504 U.S. at 185; United States v. Romolo, 937 F.2d 20, 25 (1st Cir. 1991); United States v. La Guardia, 902 F.2d 1010, 1015 (1st Cir. 1990)) (stating that a prosecutor's discretion is constrained in "cases in which the government explicitly undertakes to make, or to consider making, such a motion").

changed even if the government had chosen to make the motion. Newell was not prejudiced by any failure of his counsel to adequately argue for a substantial assistance departure.

Newell also asserts that his counsel was ineffective related to the substantial assistance claim because his public defender's actions before the second debriefing led the government to conclude Newell was lying, thereby depriving him of the § 5K1.1 motion. Newell claims his lawyer failed to provide him with the drug quantities alleged by co-conspirators in their debriefings. He claims his counsel was ineffective because counsel told Newell prior to his second debriefing to "tell the truth" instead of sticking with his original exaggerated numbers.

Newell's contentions fail for a multitude of reasons. First, the government never made any promise to make a § 5K1.1 motion—all that the government did was agree to a second debriefing. Second, there is no evidence in the record, nor has Newell pointed to any, that his counsel had access to or possession of the alleged reports and debriefings of co-conspirators prior to the second debriefing. Third, by the time the second debriefing occurred, Newell had already dissembled in a way that made it unlikely that his testimony would have been very useful to the prosecution. Fourth, it would have been in violation of professional standards of conduct for any lawyer to advise Newell to mold his testimony to conform to what the government believed—the duty of every lawyer is to promote candor. Certainly no error can lie for a lawyer to tell his client to tell the truth and not to exaggerate. Newell has no valid ineffective assistance of counsel claims related to substantial assistance. His claim is **DENIED**.

## DECISION

For the foregoing reasons, Newell's Motion to Vacate under 28 U.S.C. § 2255 is **DENIED**, and the action is **DISMISSED with prejudice**. A hearing is not necessary because "the files and records of the case conclusively show that [Newell] is entitled to no relief."[34] Newell's Motion to Unseal Document[35] and Motion for Order Directing the Government to Respond to 2255 Motion[36] are **DISMISSED as moot**.

## CERTIFICATE OF APPEALABILITY DENIED

The court certifies that an appeal from the dismissal of this action may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith.[37] The court further finds that Newell has failed to make a substantial showing of the denial of a constitutional right and the issues presented in this case are inadequate to deserve further consideration.[38] Therefore, the court will not issue a certificate of appealability.

If Newell desires further review of his Motion to Vacate under 28 U.S.C. § 2255, he may request the issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals.[39]

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 22nd day of November, 2017.

---

[34] 28 U.S.C. § 2255(b).
[35] Doc. #234, Mot. to Unseal Doc.
[36] Doc. #259, Mot. for Order Directing Gov. to Respond to 2255 Mot.
[37] See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).
[38] See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).
[39] Tiedeman v. Benson, 122 F.3d 518, 520–22 (8th Cir. 1997).

Sitting by designation:

Ralph R. Erickson, Circuit Judge
Eighth Circuit Court of Appeals